THOMPSON, J.
 

 The defendant assigned to the plaintiff certain oil and gas leases on three separate tracts of land. The lands were situated in the same township and range, but in different sections. One of the tracts contained 160 acres, and was located in section 16, and the other two tracts contained 4.0 acres each, and were located in sections 18 and 32.
 

 The price paid by the plaintiff for the entire acreage covered by the three leases was $16,000.
 

 It - turned out that a mistake had been made in describing the 40-acre tract in section 32 in the lease from Mrs. Dora Gembert to the defendant, Atkins; it being described as in township 11 instead of township 12. Mrs. Gembert, subsequent to the assignment by Atkins to the plaintiff, executed a lease on the particular 40 acres to another party under a correct description, and the said land passed beyond the power of enforced correction of the description so as to validate defendant’s assignment to plaintiff.
 

 This suit is to recover the proportionate price paid by the plaintiff for the lease on said 40 acres of land, together with' a certain specified amount as damages for loss of profits which plaintiff could have made by a sale of the lease at an advance price over that which he paid for it.
 

 It is conceded that the title to the 40-acre tract failed for the reason we have already stated. The defense is that the price stated in the act of assignment, while purporting to be for the entire 240 acres, was the value placed on the 160-acre tract alone, and that the two 40-acre tracts were included at the request of the plaintiff, and that no consideration whatever was paid defendant for the said two 40-acre tracts.
 

 On a trial of the case judgment was rendered in plaintiff’s favor for the amount claimed as the proportionate price of the 40-acre tract and rejecting the other part of plaintiff’s demand for loss of profits. The plaintiff has answered the defendant’s appeal asking that the judgment be amended in this respect.
 

 The defendant in the court below offered to prove by parol testimony that the price stated in the assignment was for the 160-acre tract, and that no price was paid for the two 40-acre tracts. The evidence was objected to by the plaintiff, for the reason that the contract was the best evidence, and for the further reason that it was beyond the pleadings. The objection was sustained, and we think properly so.
 

 The general rule in cases of this kind, where there is an eviction from a part of a thing sold, and the sale is not canceled as a whole, is that the value of the part from which the party is evicted is to be reim
 
 *613
 
 bursed to the buyer according to its estimation, ' proportionately to the total price of sale. C. C. art. 2514.
 

 In considering this article the court, in Wood Mfg. Co. v. Davenport, 50 La. Ann. 510, 23 So. 448, held that, in the absence of averment and satisfactory evidence as to the relative-value of a portion of the things sold, when they are separate and distinct, and sold for one price, recovery may be had on the basis of the average of the price.
 

 And again in Bonvillain v. Bodenheimer, 117 La. 814, 42 So. 273, this court, after quoting article 2514, said:
 

 “Under the very terms of this law the value of the part must be estimated, and the recovery had of the proportion which such estimated value bears to the total price. If there be no evidence on the subject, the court may assume that the relative value of the part is not greater than an average of the whole.”
 

 The rule thus laid down was followed by the trial judge, and much oral testimony was introduced to show the relative value of the different tracts. This evidence convinced the trial judge, as it impresses us, that the average valuation per acre was the legal and proper measure of plaintiff’s recovery.
 

 The purpose of the parol evidence offered by defendant and rejected, by the court was not to show the relative and comparative value of the several tracts of land, but to show that the contract was entirely different from what it purported to be on its. face; that the consideration stated in the assignment as the price for the whole was paid only for the 160 acres in section 16, and that no part of the price was paid for the two 40-acre tracts. The effect of this evidence would have been to break down, defeat, and destroy the contract entirely in so far as the two 40-acre tracts were concerned.
 

 The Civil Code declares that an authentic act is full proof of the agreement contained in it against the contracting parties and their heirs and assigns, and the uniform jurisprudence is to the effect that no other evidence to show either simulation or want of a price and consideration in a sale of immovable property as between the parties to the act, except a counter letter or evidence in writing equivalent to a counter letter.
 

 “The unbending jurisprudence of this court does not, accordingly, allow a party to vary or destroy his own voluntary declarations, or written agreements, by anything short of written evidence.” Cary v. Richardson, 35 La. Ann. 509, citing Lesseps v. Wicks, 12 La. Ann. 740; Lynch v. Burr, 7 Rob. 96; Knox v. Liddell, 5 Rob. 111; Macarty v. New Orleans Theater Co., 2 La. Ann. 48; D’Aquin v. Barbour, 4 La. Ann. 441; Angomar v. Wilson, 12 La. Ann. 857; Letchford v. Dannequin, 16 La. Ann. 150, and to which we may add the following: Godwin v. Neustadtl, 42 La. Ann. 735, 7 So. 744; Robinson v. Britton, 137 La. 863, 69 So. 282; Brewer v. New Orleans Land Co., 154 La. 446, 97 So. 605; Succession of Curtis, 156 La. 243, 100 So. 412.
 

 As we have already stated, the purpose of the proffered parol testimony was not to prove the relative value of the land and to show that the 40-acre tract possessed no value or a value less than the average price of the whole acreage, for which purpose parol testimony was admissible and was admitted, but the manifest object was to show that the defendant received no consideration whatever for this 40-acre tract, and thereby to contradict and destroy the written agreement, which cannot be done under the authorities which we have already cited.
 

 The cases cited by the defendant to the effect that an acknowledgment of the price stated in a deed has no greater effect than a receipt which may be explained by parol testimony can have no possible application to such a case as here presented. The extent of the holding in the Queensborough Land Co.
 
 *615
 
 case, 136 La. 724, 67 So. 641, L. R. A. 1916B, 1201, Ann. Cas. 1916D, 1248, was clearly pointed out in Brewer v. New Orleans Land Co., cited supra.
 

 The second part of plaintiff’s demand is founded on a separate agreement by which the defendant obligated himself, in the event there should be any defects in his title, to take steps to correct the said defects so as to insure a valid title.
 

 We do not regard this agreement as adding anything to the rights which the plaintiff had under the legal and implied warranty in the original assignment of the leases. Neither under this special agreement nor under the legal warranty is the plaintiff entitled to recover for profits which it would have been able to make on account of the increased value of the leases.
 

 It has been held that the damages which a party may recover in addition to the return of the purchase price in cases of eviction do not include the increased value of the property which has been caused by the fluctuation in the estimated value of it. Norwood v. Pettis, 10 La. Ann. 259; Bonvillain v. Bodenheimer, 117 La. 815, 42 So. 273.
 

 Moreover, it would be practically impossible to determine whether there had or had not been an ephancement in the value of an oil and gas lease, because from its inherent nature it is not susceptible of having anything more than a mere conjectural and speculative value. In a very recent case we said:
 

 “In the admitted speculative nature of the intangible right it is impossible that there could be any fixed and dependable valuation.” Wilkins v. Nelson, 155 La. 807, 99 So. 607.
 

 The fluctuation in prices, dependent on the' production or nonproduction of oil or gas in the neighboring territory, is too great and' too uncertain to serve as a legal basis for an allowance as damages for loss of | profits to an evicted purchaser of an oil or gas lease.
 

 We find no error in the judgment appealed from, and it is accordingly affirmed.